# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CT-00754-SCT

*DAN H. SINGLEY, JR.*

*v.*

*JANE K. SINGLEY*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/8/1998 |
| TRIAL JUDGE: | HON. SARAH P. SPRINGER |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | HENRY PALMER |
| ATTORNEYS FOR APPELLEE: | MARK A. CHINN |
| | WILLIAM D. KETNER, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED & RENDERED IN PART; REVERSED AND REMANDED IN PART - 10/17/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The Lauderdale County Chancery Court granted Dan H. Singley (Hank) a divorce from his wife, Jane K. Singley (Jane), on the ground of uncondoned adultery. The chancellor equitably divided the marital estate and awarded Jane rehabilitative alimony. Hank appealed, and the Court of Appeals affirmed as to issues concerning equitable distribution. The Court of Appeals also held: (1) goodwill could be incorporated into the business valuation of Hank's dental practice; (2) the evidence supported an almost even division of marital property; (3) Hank's $70,000 inheritance was commingled and became marital property; and (4) Jane could not be awarded temporary rehabilitative alimony, as the issue was not properly before the court because the pre-trial order did not include the issue of alimony. Hank filed a motion for rehearing with the Court of Appeals, which was denied. Hank then filed a petition for writ of certiorari with this Court, which we granted. Hank asserts the following issues for review:

### I. SHOULD MORE WEIGHT BE GIVEN TO MARITAL FAULT IN APPLYING THE *FERGUSON* FACTORS, PURSUANT TO *CARROW I* AND *CARROW II*?

**II. SHOULD "GOOD WILL" BE USED IN THE VALUATION OF A SOLE PROPRIETORSHIP FOR PURPOSES OF EQUITABLE DISTRIBUTION?**

**III. WAS HANK'S INHERITED MONEY COMMINGLED, THUS A MARITAL ASSET FOR THE PURPOSE OF EQUITABLE DISTRIBUTION?**

¶2. In her response to Hank's petition for certiorari, Jane asserts an additional issue for review:

**IV. WAS THE COURT OF APPEALS INCORRECT IN REVERSING AND RENDERING THE CHANCERY COURT'S DETERMINATION THAT IT COULD AMEND ITS OWN PRETRIAL ORDER?**

¶3. We hold that the Court of Appeals was correct in reversing the rehabilitative alimony awarded to Jane. We reverse and remand the issue of the $70,000 inheritance Hank received from his mother. We also reverse and remand the issue of marital fault. The chancellor should reconsider the $70,000 and marital fault when determining equitable distribution of the marital property on remand. Regarding the first impression issue of whether goodwill can be incorporated into the business valuation of Hank's dental practice for consideration by the chancellor in determining equitable distribution of property in a divorce action, we hold that it can not and we reverse and render.

## FACTS

¶4. The following recitation of facts is taken from the Court of Appeals' decision:

> ¶2. Hank and Jane Singley were married for twenty-three years and had one son who, at the time of their divorce, was in college on scholarship. Jane admitted to having numerous affairs during her marriage, and Hank was granted a divorce on the ground of uncondoned adultery. He appeals, however, the chancellor's decisions regarding the division of the marital estate, his $70,000 contribution toward the purchase of the marital home which was his inheritance from his mother's estate, and the court's value of Hank's dental practice. Further, Hank asserts that the "Court failed to take into consideration the *Ferguson* principles of equitable distribution by failing to appropriately consider the costs and tax effect of money and the ability of Dr. Singley to comply with the equitable division ruling," that is, either liquidate assets which would involve tax consequences or borrow money which would involve interest expenses. In addition, Hank challenges the chancellor's award of temporary rehabilitative alimony. Finally, he contests several evidentiary rulings made by the chancellor.

> ¶3. In her opinion and judgment, the chancellor awarded Jane $1,500 a month in periodic rehabilitative alimony for a period of one year. The chancellor divided the marital estate giving each party fifty percent. The chancellor appointed an expert to valuate Hank's dental practice. Additionally, the chancellor considered the testimony of Chuck Rae, Hank's accountant. However, because the court-appointed expert had expertise specific to the valuation of businesses, while Hank's accountant did not, the chancellor chose to accept the court-appointed expert's valuation of Hank's dental practice at $145,000. It is from these decisions of the chancellor that Hank appeals.

*Singley v. Singley*, 2000 WL 1387961, *1 (Miss. Ct. App. Sept. 26, 2000).

## STANDARD OF REVIEW

¶5. "This Court will not interfere with a chancellor's findings of fact unless they are manifestly wrong, clearly erroneous or an erroneous legal standard was applied. However, we review the chancellor's interpretation and application of the law de novo." *Marshall v. Gibson Steel, Inc.*, 806 So.2d 266, 270 (Miss. 2002).

## DISCUSSION

### I. WHETHER MORE WEIGHT SHOULD BE GIVEN TO MARITAL FAULT IN APPLYING THE *FERGUSON* FACTORS, PURSUANT TO *CARROW I* AND *CARROW II*?

¶6. Hank argues that the chancellor erred by not giving more weight to the fact that Jane admittedly had numerous affairs during their twenty-three year marriage. Hank further argues that Jane should have been penalized and should not have received 50% of the marital assets as the chancellor so ordered. Hank argues that one of the principles of *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994), is that marital misconduct or fault as a ground for divorce is relevant to equitable distribution if it impacted the harmony and stability of the marriage.

¶7. Jane responds that Hank relies solely on his own testimony and minimizes or ignores the contrary testimony that favors her. In fact, Hank does rely on other testimony, particularly the testimony of Jane's mother. As we have often stated: "This Court must examine the entire record and accept that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact." *Ezell v. Williams*, 724 So.2d 396, 397 (Miss. 1998). "The word 'manifest,' as defined in this context, means 'unmistakable, clear, plain, or indisputable.'" *Magee v. Magee*, 661 So.2d 1117, 1122 (Miss. 1995). "Where evidence is contradictory, this Court 'generally must affirm.'" *Boatner v. State*, 754 So.2d 1184, 1191-92 (Miss. 2000).

¶8. Hank claims the chancellor's decision is at odds with *Carrow I* and *Carrow II*.[1] In *Carrow I*, 642 So.2d at 903, Jean Carrow was granted a divorce from Jimmie Carrow, her husband of twenty-nine years. The chancellor determined that Jean was not entitled to equitable distribution. *Id.* at 904. This Court reversed and remanded, stating that the chancellor placed undue emphasis on Jean's three affairs that occurred after the couple were separated and failed to make findings on the record as to how these affairs contributed to the deterioration, if any, of the marriage. *Id.* at 905. This Court stated:

> It is difficult to adjust conventional values of morality when weighing marital misconduct for purposes of a just division of marital property. However, marital misconduct is a viable factor entitled to be given weight by the chancellor when the misconduct places a burden on the stability and harmony of the marital and family relationship. *See Ferguson v. Ferguson*, 639 So.2d 921, 927 (Miss.1994). Thus, the chancellor erred in holding that Jean's adulterous conduct precluded her from being entitled to any form of equitable distribution of the property upon divorce. In addition, this case must also be considered in light of this Court's recent case of *Ferguson*, which deals with the issue of equitable distribution and also provides guidelines for the division of marital property, as well as, *Hemsley v. Hemsley*, 639 So.2d 909, 915 (Miss.1994), which defines "marital assets as any and all property acquired or accumulated during the marriage."

642 So. 2d at 904-05. Citing *Hemsley*, we further stated:

> We define marital property for the purpose of divorce as being any and all property acquired or accumulated during the marriage. Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor. We assume for divorce purposes that the contributions and efforts of the marital partners whether economic, domestic or otherwise are of equal value.

*Carrow I*, 642 So.2d at 906. We then reversed and remanded with instructions for the chancellor to conduct equitable distribution, applying the *Ferguson* factors.

¶9. In *Carrow II*, 741 So.2d 200 (Miss. 1999), Jimmie appealed the subsequent equitable distribution of the couple's assets by the chancellor. This Court affirmed, stating:

> In addition to contributing her employment income, Jean raised the parties' child, and handled most of the household duties and expenses, which allowed Jimmie to use more of his time and money for business investments. The court determined Jimmie's contribution to the accumulation of the property included his income from employment and rental income, as well as his restoration of the Corvettes in the collection. There was no finding by the court as to any tax consequences or emotional value in reference to the distribution of the marital assets.

*Id.* at 203. Concerning the adultery, we stated:

> The chancellor correctly found the affairs to be just one factor for the court to consider in reference to any burden that may have been placed on the stability and harmony of the marital and family relationship. The chancellor further found that Jean greatly contributed to the stability and harmony of the parties' marital and family relationship by working full-time, taking care of the family's needs, taking care of Jimmie, and raising the parties' child. It is apparent that the chancellor considered the adultery, but found that it did not burden the stability and harmony of the Carrow family relationship. That finding is not manifestly erroneous.

*Id.* at 204.

¶10. In the case sub judice, *Ferguson* factor (1)(b), ("Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage") is the factor Hank argues weighs heavily in his favor. We agree with Hank. Contributions and fault should be considered by the chancellor in determining equitable distribution of a marital estate. Jane's admissions concerning eight incidents of adultery all of which occurred during the last fifteen years of the marriage resulting in her being physically absent from her home and away from her son and her husband for significant periods of time during these escapades clearly reflect that such marital misconduct was relevant to the chancellor's consideration of equitable distribution because it impacted upon the harmony and stability of the marriage. While it is only one of the *Ferguson* factors to be considered, when the facts of this case are examined, the overwhelming nature of Jane's involvement in numerous affairs and the resulting strain and conflict created in the marriage cannot be ignored or lessened. The testimony of Jane's mother is indeed revealing as she knew nothing of Jane's numerous affairs. Yet, she testified that Jane had been gone from Hank and Dan, both physically and emotionally, for about a year before the divorce action was initiated. Hank's claim that the affairs affected the stability and harmony of the marriage is substantially

supported by the testimony.

¶11. In *Ferguson*, we said, "it must be remembered, the goal in a divorce case is to do equity." *Ferguson*, 639 So.2d at 934. Equity envisions equal partners pulling equally together during life's good times as well as during times of trials and tribulations. Evidence of such togetherness would warrant substantial participation if not equal distribution of property assets by a chancellor when applying the principle of equitable distribution.

¶12. Here, the chancellor considered, on the record, the *Ferguson* factors and decided the marital assets should be divided 50/50. The chancellor found that Jane was physically and emotionally gone from Hank and their son because of the numerous adulterous relationships. She also found that Jane was extravagant. Nevertheless, the chancellor awarded Jane 50% of the marital assets. Considering the significant and compelling facts of this case, the division of the assets appears to place minimal weight upon the numerous incidents of Jane's adultery and its effect on the marriage and also ignores principles of equity.

¶13. We find the Court of Appeals' decision is in conflict with *Carrow I* and *Carrow II.* In *Carrow II,* in upholding the chancellor we noted that there was no burden created by the adulterous relationships of Betty Jean upon the stability and harmony of the Carrow family relationship. 741 So. 2d at 204. Also, we note that in *Carrow I*, Betty Jean's three affairs occurred after the separation of the parties, thus, there was no finding by the chancellor as to how these affairs contributed to the deterioation, if any, of the marriage. *Carrow I*, 642 So. 2d at 905. In the case sub judice however, Jane's numerous affairs significantly impacted and burdened the stability and harmony of the marriage, and we again note that it was Hank who was granted the divorce on grounds of adultery because of Jane's numerous affairs. Although a chancellor is generally given great deference as to findings of fact and conclusions of law, here, considering the overwhelming nature of the evidence adduced by Hank, we conclude that the chancellor's decision was unsupported by substantial evidence. Thus, the chancellor in applying the law to these facts was manifestly wrong, abused her discretion, and failed to do equity. As such, we reverse and remand this issue for rehearing.

## II. SHOULD "GOOD WILL" BE USED IN THE EVALUATION OF A SOLE PROPRIETORSHIP FOR PURPOSES OF EQUITABLE DISTRIBUTION?

¶14. Hank next argues that including goodwill in the valuation of a sole proprietorship business used for purposes of equitable distribution during divorce proceeding is not the better reasoned approach and that this Court should address to this issue. Jane responds that the expert who evaluated Hank's dental business was neutral and court-appointed. Jane argues that this Court has previously recognized that it was appropriate to include goodwill in the fair market value of a professional business, although not for the purposes of equitable distribution. The Court of Appeals, however, noted that its holding that goodwill could be used in the valuation of a business when determining equitable distribution in a domestic setting is one of first impression. The Court of Appeals also properly stated:

> ¶21. The issue of whether "goodwill" is to be used in the valuation of a business for the purpose of determining values for the division of property in divorce cases is a hotly contested issue across the nation. Numerous law journal articles and papers have been written on the subject. And, each jurisdiction having addressed the issue has placed its own unique spin on how goodwill should be treated.

*Singley*, 2000 WL 1287961 at 7-8.

¶15. We note that the Court of Appeals is correct that the issue is one of first impression and also correct regarding the disputed holdings of the state jurisdictions across the country. Various jurisdictions have held that goodwill is an aspect of income potential and should be considered marital property used in arriving at a value of a business while other states have held that it should not be considered. In the case sub judice, the court-appointed expert, James Koerber, determined the fair market value of Hank's dental practice using an asset-based approach, which included intangible assets such as good will. Koerber utilized the definition of "fair market value" taken from a 1959 IRS ruling, as follows:

> The price at which property would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, bother [sic, both] parties having reasonable knowledge of the relevant facts.

Koerber valued the cash, accounts receivable, inventory property/equipment, and goodwill which totaled $148,614. Liabilities were fixed at $80,992. Koerber determined that the practice could sell for $145,000. The chancellor accepted this valuation. More revealing here is what did not occur at trial. Hank's expert, Chuck Rae, was not allowed to state his opinion concerning the value of Hank's dental practice and office building. The denial of this testimony is contrary to the intent of Miss. R. Evid. 702. Hank could have even valued his own practice had he so desired. The chancellor should have allowed Rae's testimony, and she was then free to accept or reject that testimony. We find that the chancellor erred in not allowing Rae to give his opinion as to the value of Hank's dental practice.

¶16. The issue of goodwill in the context of distribution in a divorce action is indeed one of first impression. Although this Court has previously noted that goodwill was used by an expert appraiser in establishing the fair market value of a professional business, this Court did not specifically address the issue directly or elaborate thereon. The Court simply found no error by the chancellor in accepting the expert's valuation of the business and the case was reversed for other reasons. *In re Dissolution of Jackson Arthritis Clinic & Osteoporosis Ctr.*, 755 So. 2d 418, 422 (Miss. 2000). However, we note that the case is distinguished from the case at bar as it is instructive only regarding valuation for the purpose of dividing a corporation between two business professionals and not in the context of marital property division in a domestic case. More recently by footnote in *Mace v. Mace*, 818 So. 2d 1130, 1133 n.3 (Miss. 2002), this Court stated that "the opinions of other jurisdictions are split regarding whether goodwill may be considered in valuing a professional practice and, if so, how good will is to be calculated." We also noted that the issue was not before us, thus we declined to address it. *Id.* at 1136.

¶17. We disagree with the Court of Appeals that goodwill may be included in the valuation of a business when the issue of that valuation concerns distribution in a divorce action. We join the jurisdictions that adhere to the principle that goodwill should not be used in determining the fair market value of a business, subject to equitable division in divorce cases. Many other states have previously adopted this rule: *Christians v. Christians*, 732 So. 2d 47 (Fla. Dist. Ct. App. 1999) (holding failure to assign goodwill value to business was not erroneous where any goodwill rested solely on husband's well known reputation and abilities and his continued existence and involvement in the business); *In re Marriage of Zells*, 572 N.E.2d 944 (Ill. 1991) (goodwill in professional practice is not marital property, but is an aspect of income potential to be considered in maintenance and support); *In re Marriage of Claydon*, 715 N.E.2d 1201 (Ill. App. Ct. 1999) (noting that professional goodwill is an aspect of income potential and should be

reflected in maintenance awards otherwise additional consideration of goodwill is duplicative and improper); ***Yoon v. Yoon***, 711 N.E.2d 1265, 1269 (Ind. 1999) (stating that Indiana law adheres to the rule that goodwill based on the personal attributes of the individual is not properly part of the marital estate); ***Powell v. Powell***, 648 P.2d 218 (Kan. 1982) (goodwill in medical practice is not an asset subject to division in dissolution); ***Nail v. Nail***, 486 S.W.2d 761 (Tex. 1972) (goodwill in a doctor's practice is not a divisible asset because it does not possess value or constitute an asset separate and apart from the doctor's person or ability to practice the profession); ***Holbrook v. Holbrook***, 309 N.W.2d 343 (Wis. Ct. App. 1981) (marital estate does not include goodwill of husband's partnership interest in law firm). We conclude that these states have adopted the better view.

¶18. The term goodwill as used in determining valuation of a business for equitable distribution in a domestic matter is a rather nebulous term clearly illustrating the difficulty confronting experts in arriving at a fair, proper valuation. Goodwill within a business depends on the continued presence of the particular professional individual as a personal asset and any value that may attach to that business as a result of that person's presence. Thus, it is a value that exceeds the value of the physical building housing the business and the fixtures within the business. It becomes increasingly difficult for experts to place a value on goodwill because it is such a nebulous term subject to change on a moment's notice due to many various factors which may suddenly occur, i.e., a lawsuit filed against the individual or the death and/or serious illness of the individual concerned preventing that person from continuing to participate in the business. It is also difficult to attribute the goodwill of the individual personally to the business. The difficulty is resolved however when we recognize that goodwill is simply not property; thus it cannot be deemed a divisible marital asset in a divorce action. We recognize however that regardless of what method an expert might choose to arrive at the value of a business, the bottom line is one must arrive at the "fair market value" or that price at which property would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, both parties having reasonable knowledge of the relevant facts. Consequently, today we join those sister states who prohibit goodwill from inclusion in valuing a business for distribution as marital property in a domestic case. Accordingly, we reverse and render the chancellor as to the inclusion of goodwill in the value of Hank's business.

## III. WAS HANK'S INHERITED MONEY COMMINGLED, THUS A MARITAL ASSET FOR THE PURPOSE OF EQUITABLE DISTRIBUTION?

¶19. Hanks final issue concerns the $70,000 he contributed toward the purchase of the marital home from money he had inherited from his mother's estate. Hank claims that he "placed this [money] into the marital home to reduce the family's obligation of interest expense through additional mortgage." Hank claims he was unaware of his wife's affairs and would not have placed the $70,000 in the mortgage if he had known of the affairs. Hank argues that the chancellor erred by holding that this money had been commingled and was thus marital property.

¶20. Jane responds that while the marital home was acquired, in part, with proceeds of Hank's inheritance, substantial marital funds were also used to acquire the home. Jane further asserts that recent cases from this Court and the Court of Appeals support the chancellor's decision.

¶21. In ***Heigle v. Heigle***, 654 So.2d 895, 897 (Miss. 1995), this Court stated: "Nonmarital assets may be converted to marital assets if they are commingled with marital assets or used for familial purposes." Hank claims he placed the money in the "marital home," in order to reduce the "family's" obligation. However, it

appears from the record that although the chancellor correctly determined that the $70,000 inheritance was co-mingled and became a part of the marital estate, she apparently failed to realize that she could adjust the *Ferguson* distribution because of the factors surrounding the source and application of the $70,000. [*Bullock v. Bullock*](), 699 So. 2d 1205 (Miss. 1997). In ***Bullock***, the Court stated, "In making an equitable division of marital property, however, the chancellor is not required to divide the property equally."***Id***. at 1210-1211 (citing ***Trovato v Trovato***, 649 So. 2d 815, 817-18 (Miss. 1995); ***Davis v. Davis***, 638 So. 2d 1288, 1292 (Miss. 1994); ***Dudley v. Light***, 586 So. 2d 155, 161 (Miss. 1991); ***Brown v. Brown***, 574 So. 2d 688, 691 (Miss. 1990). This Court has previously considered the issue of equitable division of marital property where sizeable funds given by one spouse's parents were used as a down payment to purchase a jointly owned home for both parties. There, the chancellor gave sole ownership of the home to the wife who had the received the funds initially from her parents. The Court, in holding the funds were comingled stated, "The fact that Mary's parents gave her a significant portion of the down payment is certainly one of the ***Ferguson*** factors that the chancellor should have considered when he divided the property, but it is not the only factor to be considered." ***Id*** at 265. This same principle was noted when the chancellor ultimately held in ***Carrow II*** that Betty Jean Carrow should be entitled to some interest, though not necessarily half and this Court upheld that decision. Here, while Jane may be entitled to some interest in the $70,000 comingled funds, she is not necessarily entitled to half. Accordingly, we reverse and remand for the chancellor to reconsider this amount when she applies the ***Ferguson*** factors in equitable distribution.

### IV. WAS THE COURT OF APPEALS INCORRECT IN REVERSING AND RENDERING THE CHANCERY COURT'S DETERMINATION THAT IT COULD AMEND ITS OWN PRETRIAL ORDER?

¶22. In her response to Hank's petition for certiorari, Jane claims the Court of Appeals erred in reversing and rendering the award of rehabilitative alimony. Jane argues that she had specifically requested both periodic and lump-sum alimony in her answer and counterclaim. Jane further argues that the Mississippi Rules of Civil Procedure supports her argument. Pursuant to Rule 15(b):

> **(b) Amendment to Conform to the Evidence.** When issues not raised by the pleadings are tried by expressed or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in the maintaining of his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence. **The court is to be liberal in granting permission to amend when justice so requires.**

[M.R.C.P. 15(b)]() (emphasis added). Significantly, the emphasized sentence appears only in the Mississippi Rules and not in the Federal Rules of Civil Procedure.

¶23. In reversing and rendering the chancellor's award of temporary rehabilitative alimony, the Court of Appeals relied on Rule 16, which reads as follows:

In any action the court may, on the motion of any party, and shall on the motion of all parties to the cause, direct and require the attorneys for the parties to appear before it at least twenty days before the case is set for trial for a conference to consider and determine:

(a) The possibility of settlement of the action;

(b) the simplification of the issues;

. . .

(l) such other matters as may aid in the disposition of the action.

The court may enter an order reciting the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any other matters considered, and **limiting issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered shall control the subsequent course of the action, unless modified at the trial to prevent manifest injustice.**

M.R.C.P. 16 (emphasis added). The Court of Appeals cited ***Barvick v. Cisneros***, 953 F. Supp. 341, 344 (D. Kan. 1997) as follows: " Interpretation of the pre-trial order and whether to permit modifications to the order to avoid manifest injustice are decisions within the sound discretion of the trial judge."*Singley*, 2000 WL 1387961 at *9.

¶24. At trial, the chancellor allowed Jane to put forward evidence of her need for alimony, in order "to be fair to both parties and to do equity." Hank argued prejudice and surprise that alimony was a contested issue at trial as there had been no mention of alimony in the pre-trial statement which expressly stated the issues to be determined at trial as to grounds for the divorce, assets to be included, and what portion Jane was entitled to receive, if any. Accordingly, Hank's counsel argued that he was surprised and thus unprepared to defend the issue of alimony at trial.

¶25. The Court of Appeals concluded that the chancellor abused her discretion in determining that the issue of alimony was a matter properly before the Court. We agree with the Court of Appeals. The pre-trial statement approved by order of the chancellor controls. It is clear and concise, easily understood and substantially complies with M.R.C.P. 16. We hold that the chancellor cannot modify the statement unless it is done by mutual agreement with the parties as was initially done, or the chancellor finds manifest injustice, neither of which occurred. The Court of Appeals is affirmed on this issue.

## CONCLUSION

¶26. We affirm the Court of Appeals on the issue of denial of rehabilitative alimony. We reverse and render on the issue of goodwill. The chancellor on remand must allow expert testimony from Dan's appraiser regarding the value of the dental practice. We reverse and remand on the issue of the $70,000 inheritance Hank received from his mother. We reverse and remand on the issue of marital fault. The chancellor should reconsider the $70,000 and Jane's marital fault when applying the ***Ferguson*** distribution factors regarding the division of marital property on remand in order that equity be done. We remand for further proceedings in accordance with this opinion.

¶27. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND**

**REMANDED IN PART.**

**PITTMAN, C.J., WALLER, COBB, DIAZ, EASLEY AND CARLSON, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

1. *Carrow v. Carrow*, 642 So.2d 901 (Miss. 1994)(*Carrow I*); *Carrow v. Carrow* , 741 So.2d 200 (Miss. 1999)(*Carrow II*).