# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CT-01362-SCT

*DRAKE L. LEWIS*

*v.*

*TONIA D. LEWIS*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 07/11/2008 |
| TRIAL JUDGE: | HON. CARTER O. BISE |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | THOMAS WRIGHT TEEL |
| ATTORNEY FOR APPELLEE: | DEAN HOLLEMAN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | THE JUDGMENTS OF THE COURT OF APPEALS AND THE CHANCERY COURT OF HARRISON COUNTY ARE AFFIRMED IN PART AND REVERSED IN PART.  THIS CASE IS REMANDED TO THE CHANCERY COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION – 02/03/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     The Court of Appeals reversed and remanded the equitable distribution of a marital estate, as it found that the chancellor had made manifest errors.  *See **Lewis v. Lewis***, 2009 WL 4591384 (Miss. Ct. App. Dec. 8, 2009).  We agree with the Court of Appeals that the trial court erred regarding the evaluation and distribution of marital assets, but find that the

Court of Appeals erred in its remand instruction. *See id.* at **6-7, 9-10. Thus, we remand the case to the trial court for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2.     The Court of Appeals' opinion sufficiently sets out the facts and issues on appeal, which need not be repeated. *See id.* at *1. The Court of Appeals affirmed in part, reversed in part, and remanded for further proceedings. *Id.* at **6, 10. Tonia raised two issues in her petition for certiorari: (1) Mississippi caselaw is in direct conflict with the Court of Appeals' remand instruction on the valuation of a business; and (2) the Court of Appeals exceeded its authority, ignored the discretion given to a chancellor, and mistakenly found manifest error in the valuation and treatment of marital assets. This Court granted certiorari. *Lewis v. Lewis*, 42 So. 3d 24 (Miss. 2010). We find no error as to issue two and thus address only issue one.

## ANALYSIS

¶3.     *Inter alia*, the Court of Appeals instructed:

> the chancery court should value Legacy using: (1) any real property owned by Legacy; (2) any other property owned by Legacy, such as vehicles or tools; (3) *goodwill equity*, if any, attributable to Legacy; and (4) any improvements that Legacy owns that are made to real property owned by parties other than Legacy. In making these determinations, the chancery court should consider "that price at which [the business] would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, both parties having reasonable knowledge of the relevant facts."

*Lewis*, 2009 WL 4591384, at *6 (emphasis added) (quoting *Singley v. Singley*, 846 So. 2d 1004, 1011 (Miss. 2002)). Error lies in not completing the above quote, for paragraph eighteen of *Singley* also unequivocally states "today we join those sister states who prohibit

2

goodwill from inclusion in valuing a business for distribution as marital property in a domestic case." *Id. Singley* was followed and further clarified by *Watson* and *Yelverton*. *See Yelverton v. Yelverton*, 961 So. 2d 19 (Miss. 2007); *Watson v. Watson*, 882 So. 2d 95 (Miss. 2004). Thus, Mississippi caselaw prohibits the inclusion of goodwill in valuing a business interest for distribution as marital property. "'[G]oodwill,' whether 'personal goodwill' or 'business enterprise goodwill' shall not be included in the valuation of [a car dealership]." *Yelverton*, 961 So. 2d at 29. "[G]oodwill is simply not property; thus it cannot be deemed a divisible marital asset in a divorce action." *Singley*, 846 So. 2d at 1011. Upon remand, the chancellor should value Legacy[1] without considering goodwill.

¶4. While I expressed a similar concern as raised in Justice Kitchens's dissent (see my dissent in *Watson*), that argument has been soundly rejected by this Court. *See Watson*, 882 So. 2d at 111-12 (Randolph, J., dissenting). If *Singley* lacked clarity, this Court's unanimous holdings in *Watson* and *Yelverton* are exceedingly clear and comprehensive. *See Yelverton*, 961 So. 2d at 30; *Watson*, 882 So. 2d at 105-06. To consider goodwill equity contravenes this Court's precedent. *Stare decisis* demands this result.

¶5. At trial, the chancellor was presented with a sizable marital estate. One party provided evidence of dubitable reliability, albeit the best she could muster. The other party was recalcitrant and demonstrated a lack of credibility to the chancellor. The marital estate exceeded $2,000,000 and involved alleged transfers from trusts and section 1031 tax

---

[1]Legacy is variously described as: (1) Legacy Holdings; (2) Legacy Holdings, Inc.; (3) Legacy Holdings, LLC; (4) Legacy Builders, Inc.; and (5) Legacy Builders, a sole proprietorship (formed after separation).

3

transfers. *See* 26 U.S.C. § 1031 (2009). A proper evaluation is indeed complex and may well require special knowledge or expertise. The chancellor recognized the complexity, for, after the close of evidence, he stated that each side had given him "way too much" in this "complicated matter financially." Perhaps a special master skilled in evaluating a business would be of significant assistance. We recognize that reference to a master without the consent of the parties is the exception and not the rule. *See* Miss. R. Civ. P. 53(c); ***Trovato v. Trovato***, 649 So. 2d 815, 818 (Miss. 1995). We recognize also that the cost of appointing a special master may be economically prohibitive in most cases. *See **Crowe v. Smith***, 603 So. 2d 301, 308 (Miss. 1992) ("According to rule 53, the payment of a master is a cost, and thus falls under the ambit of rule 54."); Miss. R. Civ. P. 53(a), 54(d). Here, where the marital estate is sizable, ownership and valuation are complex, and the evidence presented is of questioned reliability, combined with the litigants' ability to pay, reference to a special master might afford the chancellor significant assistance.[2]

¶6.    "[W]here the finding to be made is of a complex, technical, non-legal nature, a person other than an attorney . . . may be appointed . . . ." Miss. R. Civ. P. 53(b). Any issue may be referred to a special master with the consent of the parties. Under Mississippi Rule of Civil Procedure 53(c), reference without the consent of the parties would require a finding by the chancellor of exceptional conditions. The chancellor is in the best position to make the determination of whether the conditions in this case are sufficiently exceptional to

---

[2]These factors are specific to the case *sub judice* and are neither inclusive nor exclusive factors for consideration by a chancellor, but rather, the determination of exceptional conditions must be on a case-by-case basis.

warrant the appointment of a special master. Should the chancellor discern that exceptional conditions exist, he may specify or limit the authority of a special master in the order of reference. *See* Miss. R. Civ. P. 53(d).

## CONCLUSION

¶7.    Upon remand, the chancellor shall cause the marital assets to be reevaluated consistent with the instructions of this opinion and those of the Court of Appeals, with the exception of considering goodwill equity.

¶8.    **THE JUDGMENTS OF THE COURT OF APPEALS AND THE CHANCERY COURT OF HARRISON COUNTY ARE AFFIRMED IN PART AND REVERSED IN PART. THIS CASE IS REMANDED TO THE CHANCERY COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

   **WALLER, C.J., CARLSON AND GRAVES, P.JJ., LAMAR AND CHANDLER, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION. DICKINSON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. PIERCE, J., NOT PARTICIPATING.**

   **KITCHENS, JUSTICE, DISSENTING:**

¶9.    I respectfully dissent from the majority's holding that goodwill may never be used as a factor in evaluating a business interest. I further note that this Court should decline to limit the discretion of the trial court regarding the appointment of a special master where, as here, the issue is not before this Court and the opinion of the Court of Appeals provides sufficient direction to the chancellor upon remand. Because the Court of Appeals did not err, its decision should be affirmed with respect to all issues.

¶10.    The case law of this state has dealt with goodwill mainly in the context of valuing a professional practice and not a business enterprise jointly held by husband and wife. ***Singley v. Singley***, 846 So. 2d 1004 (Miss. 2002), and its progeny are not applicable to the case at

hand.  While *stare decisis* likely bars reconsideration of whether goodwill may be used to value a professional practice in the property division phase of a divorce, it would be inequitable to hold that goodwill should not be taken into consideration where the marital asset is a business enterprise that either does not depend on the personal and irreplaceable efforts of one spouse or where the enterprise is jointly held by the spouses either as a partnership or as an incorporated entity.  Furthermore, any distribution of the marital estate involving the business assets necessarily should take into account the personal goodwill attributable to each of the  spouses to whatever extent, if any, that each participated in the operation of the enterprise and in the proportion to which value accrued to the enterprise as the result of their respective efforts.  To say categorically that an evaluation of goodwill is prohibited could create a result that is inequitable to one of the parties.

¶11.    The business asset in dispute is an enterprise founded by Drake and Tonia Lewis during the course of their marriage to develop residential real estate.[3] *Lewis v. Lewis*, 2009 WL 4591384 at *3, ¶ 9 (Miss. Ct. App. Dec. 8, 2009).  The parties held the incorporated entity in equal shares and bought and sold numerous tracts of real property, with some of the parcels held by separate legal title by one or the other of the parties.  *Id.*  Tonia filed a complaint for divorce in 2006; Drake never filed a responsive pleading. *Id.* at *1, ¶ 4.

¶12.    After the parties separated, Drake engaged in a course of conduct that included the diversion of corporate assets for his own use.  Drake eventually set up Legacy Builders as

---

[3] The Court of Appeals, citing the trial court's judgment, states that the Drakes formed Legacy Builders, Inc., in 2001.  The only registered business listed on the Mississippi Secretary of State's website that lists either of the parties as officer or incorporator is Legacy Holdings, Inc., administratively dissolved on December 12, 2008.

a sole proprietorship during the litigation and operated that business using corporate assets. Drake failed to respond fully to Tonia's demands for discovery with respect to the value of the various assets. Ultimately, the trial court made its ruling largely on the basis of documentation that Tonia had submitted and which she acknowledged was necessarily incomplete and out of date. *Id.* at *5, ¶ 18. Drake's only submission on the record regarding Legacy's value was his testimony that it was essentially worthless. The chancellor assigned Legacy a value of $1,148,270 and awarded it entirely to Drake as part of a judgment that awarded Tonia assets with a net value of $855,747 and awarded Drake assets with a net value of $1,807,882. Drake appealed, and we assigned the case to the Court of Appeals, which affirmed in part and reversed in part, ruling, *inter alia*, that Legacy should be revalued using all relevant data, including all real and movable property owned by Legacy, any goodwill equity attributable to Legacy and any improvements made by Legacy to property owned by other persons. *Id.* at *6, ¶ 23. Tonia filed her petition for certiorari to this Court, which we granted.

¶13. Goodwill, or the value of a business that exceeds the combined physical assets of the business, is defined as:

> the advantage or benefit which is acquired by an establishment beyond the mere value of the capital stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers on account of its local position, or common celebrity, or reputation for skill, or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices.

*Dodson v. McElreath*, 48 So. 2d 861, 864 (Miss. 1950) (citing *In re Brown*, 150 N.E. 581 (N.Y. 1926)).

7

¶14. Goodwill, along with other intangibles, can be considered as a factor in valuing a business enterprise according to generally accepted accounting principles. Financial Standards Accounting Board, *Summary of Statement No. 142: Goodwill and Other Intangible Assets* (Issued June 2001), http://www.fasb.org/summary/stsum142.shtml (last visited January 28, 2011). Furthermore, goodwill is treated alongside other intangible assets such as patents, customer lists, or licenses under the Internal Revenue Code as a depreciable asset subject to taxation or as a deductible and amortizable cost. *See* 26 U.S.C.A. § 197 (2010). Goodwill, at its core, represents the excess value of a business enterprise after subtraction of the value of all other assets from its fair market value, and despite its seeming nebulousness as a term of art, is well recognized as an intangible business asset.

¶15. Goodwill may be differentiated as personal or professional goodwill, which, as the term implies, derives from the performance of the individual stakeholder in the business enterprise; or enterprise goodwill, which is considered an asset of the business, it "is based on the intangible, but generally marketable, existence in a business of established relations with employees, customers, and suppliers." ***Watson v. Watson***, 882 So. 2d 95, 105 (Miss. 2004) (quoting ***Yoon v. Yoon***, 711 N.E.2d 1265, 1268 (Ind. 1999) (internal citation omitted)). Enterprise goodwill attaches to a business entity and is separate from the reputation of the owners. It is "divisible in a dissolution to the extent that it inheres in the business, independent of any single individual's personal efforts and will outlast any person's involvement in the business." ***Yoon***, 711 N.E.2d at 1269. "It is not necessarily marketable in the sense that there is a ready and easily priced market for it, but it is in general transferrable to others and has a value to others." ***Id.*** In the context of a professional

practice, however, the goodwill that properly belongs to the enterprise may be so bound to the performance and identity of the professional that it is, for practical purposes, personal in nature. *Watson*, 882 So. 2d at 101.

¶16.    This Court dealt with the issue of goodwill in the context of distribution of marital assets as a matter of first impression in *Singley v. Singley*, 846 So. 2d 1004 (Miss. 2002). In that case, the asset in dispute was the husband's dental practice, held as a solo professional practice. *Id.* at 1009.    After examining decisions from several states dealing with professional goodwill, including Indiana's decision in *Yoon*, the Court concluded that goodwill should not be considered in any dissolution action. *Id.*  While the Court noted the distinction between professional goodwill and enterprise goodwill, it declined to make a distinction between the two.  Contrary to generally accepted accounting principles, the Court held: "Goodwill within a business depends on the continued presence of the particular professional individual as a personal asset and any value that may attach to that business as a result of that person's presence." *Id.* at 1011.  *Singley* thereby put this Court "in the company of only four other jurisdictions [that] take the position that neither personal nor enterprise goodwill in a professional practice constitutes marital property." *Watson v. Watson*, 882 So. 2d 95, 112 (Miss. 2004) (Randolph, J., dissenting).

¶17.    The Court revisited this issue in *Watson v. Watson*, 882 So. 2d 95 (Miss. 2004). Clarifying its holding in *Singley*, the Court held that, while it recognized a distinction between personal goodwill and business enterprise goodwill, neither should be used in evaluating a solo professional practice in the context of marital dissolution. *Watson*, 882 So. 2d at 105-106.  In *Watson*, the business asset in dispute was a veterinary practice owned and

9

operated by the husband. *Id.* at 98. Treating the veterinary practice as a solo professional practice, the Court ruled that, as enterprise and professional goodwill were inextricably tied to the performance of the professional, neither would be appropriately considered in evaluating the practice as a marital asset. *Id.* at 105. However, the Court carefully noted that enterprise goodwill may be treated as property of the business, divisible on dissolution:

> to the extent that it inheres in the business, independent of any single individual's personal efforts and will outlast any person's involvement in the business. It is not readily marketable in the sense that there is a ready and easily priced market for it, but it is in general transferrable to others and has a value to others.

*Id.* at 105 (citing *Yoon*, 711 N.E.2d at 1268-69).

¶18. *Watson* therefore should be read to limit the blanket rule promulgated in *Singley* to those cases either involving a solo professional practice or those cases that are closely analogous. This rule is in line with the principle that a professional license held by a spouse is not itself marital property, even where the practice dependent on that license may be, depending on the particular facts of the case, a marital asset subject to equitable distribution. *See Mace v. Mace*, 818 So. 2d 1130, 1133 (Miss. 2002); *Guy v. Guy*, 736 So. 2d 1042 (Miss. 1999).

¶19. Finally, in *Yelverton v. Yelverton*, 961 So. 2d 19, 29 (Miss. 2007), this Court expanded its rule to hold that goodwill should not be applied as a factor when the asset in dispute is an interest in an automobile dealership and the shareholder is the managing partner. Citing *Watson*, 882 So. 2d at 105, and *Singley*, 846, So. 2d at 1011, the Court stated that, where the asset in dispute was the sole means of income for the purposes of calculating child and spousal support, goodwill could not be used in determining the value of the business

10

asset. *Yelverton*, 961 So. 2d at 29. The common thread in these cases is that the business interest at issue was either professional in nature, or at least proprietorial in the case of *Yelverton*. The relevance of *Yelverton* to the issue before us is dubious at best, in that it dealt with the income produced by an asset and not the value of the asset itself as it pertained to the marital estate. *Id.*

¶20. In this case, however, the business interest is a common business enterprise between the husband and wife, subject to their joint control and operation, at least up to the point of their separation, when Drake began using corporate assets to operate his separate business. Applying the rule from *Singley* and its progeny inappropriately restricts the chancellor's discretion in assigning a fair value to the parties' actual assets in this case, where the enterprise in question is not a professional practice and is not dependent solely on the efforts of one or the other of the disputants.

¶21. For the foregoing reasons, the decision of the Court of Appeals should be affirmed on all issues. Upon remand, the trial court should make a full determination of the market value of Legacy, including an evaluation of Legacy's enterprise goodwill, as well as whatever personal goodwill, if any, is attributable to either or both of the parties.

**DICKINSON, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶22. I would remand for a new trial on the issue of property division.

11