# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00934-COA

**JASON T. ROBERTS**                                                    **APPELLANT**

**v.**

**RAMONA M. ROBERTS**                                                  **APPELLEE**

DATE OF JUDGMENT:               06/16/2023
TRIAL JUDGE:                    HON. KENNETH M. BURNS
COURT FROM WHICH APPEALED:      LEE COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:        KAYLA FOWLER WARE
                                T. SWAYZE ALFORD
ATTORNEY FOR APPELLEE:          JOHN A. FERRELL
NATURE OF THE CASE:             CIVIL - DOMESTIC RELATIONS
DISPOSITION:                    REVERSED AND REMANDED - 02/25/2025
MOTION FOR REHEARING FILED:

> **EN BANC.**

> **WILSON, P.J., FOR THE COURT:**

¶1.     Ramona ("Mona") and Jason Roberts consented to an irreconcilable differences divorce and agreed on all issues related to child custody, visitation, and support. They agreed that the chancellor would equitably divide the marital estate and determine whether Jason should pay Mona alimony and, if so, the type and amount. The chancellor divided the marital estate and ordered Jason to pay Mona permanent alimony of $1,000 per month until their minor child, who was seventeen years old at the time of the trial and final judgment, is emancipated and $2,500 thereafter.

¶2.     On appeal, Jason challenges the equitable division of the marital estate, arguing that the chancellor erred in valuing his business and other assets. He also challenges the type and

amount of alimony the chancellor awarded.  We agree that the chancellor erred in valuing Jason's business and certain other assets.  Because our rulings on these issues impact both the equitable division of the marital estate and the alimony award, we reverse the judgment and remand the case for further proceedings consistent with this opinion on all issues.

## STATEMENT OF FACTS

¶3.     Mona and Jason were married in 1998 and had two children during their marriage. Their first child was born in 2002 and is emancipated.  Their second child was born in 2005. In 2021, the couple separated, and Mona later filed a complaint for divorce.[1]  In 2023, Mona and Jason consented to an irreconcilable differences divorce and agreed on all issues related to child custody, visitation, and support.  They agreed that Mona would have physical custody of the minor child, that they would have joint legal custody, that Jason would have specified visitation, and that Jason would pay Mona child support of $2,000 per month until the child became emancipated.  They also agreed that Mona would exclusively own the marital home and be responsible for all debt on it, that Jason would exclusively own two rental properties and be responsible for all debt on them, and that each party would retain the personal property and vehicles in their possession.  They agreed that the chancellor would value and equitably divide the marital estate and determine whether Jason should pay alimony to Mona and, if so, what type and amount.  The case then proceeded to a one-day trial at which Mona and Jason were the only witnesses.

¶4.     Mona's gross pay is $5,333.33 per month.  She testified that her monthly "take-home

---

[1] A special chancellor was appointed because Mona is a court reporter for the First District Chancery Court.

pay" is approximately $3,600 and that she receives about $500 per month in reimbursements for mileage and travel expenses. She claims monthly living expenses of $6,453.45 plus monthly installment payments and miscellaneous other expenses of $797.93 for total combined monthly expenses of $7,251.38. Mona was forty-nine years old at the time of the trial and final judgment.

¶5.     Jason has been a licensed appraiser since 2006. He worked for another appraiser until 2018 and then worked for BancorpSouth for about one year before opening his own appraisal business, Jason Roberts Appraisals Inc. His pre-tax income from his business was $119,779 in 2019; $112,255 in 2020; $128,984 in 2021; and $233,191.22 in 2022. Jason testified that his business is "just [him]" and does not "have any assets" except for a desktop computer. Jason testified that he believed his business's value was "zero" because he could not guarantee that any of his customers would hire any other appraiser who might buy his business. Jason was fifty years old at the time of the trial and final judgment.

¶6.     Post-trial, the chancellor entered a judgment granting the parties an irreconcilable differences divorce, approving their consent agreement regarding child custody, visitation, and support, and addressing the issues submitted to the court.

¶7.     After considering the *Ferguson* factors,[2] the chancellor equitably divided the marital estate. Consistent with the parties' agreement, the chancellor awarded Mona the marital home (valued at $430,000 with debt of $78,000), two vehicles with a total net value of $32,755.22, her PERS retirement account (valued at $75,654.68), and various other financial

---

[2] *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).

accounts and personal property. The chancellor calculated that the judgment left Mona with assets valued at $586,556.78 and debt of $90,244.78 for a net value of $496,312.

¶8. The chancellor awarded Jason the two rental properties (with a combined value of $219,000 and debt of $76,620), his truck (valued at $29,000), his retirement account (valued at $71,626), and various other financial accounts and personal property. The chancellor also awarded Jason his appraisal business. The chancellor set the value of Jason's business by calculating Jason's average income from the business from the four prior years: $149,350.[3] The chancellor calculated that the judgment left Jason with assets valued at $633,366.43 and debt of $76,620 for a net value of $556,746.43. The chancellor noted that the judgment distributed 47% of the net value of the marital estate to Mona and 53% to Jason.

¶9. After discussing the *Armstrong* factors,[4] the chancellor stated that Mona was left with "a deficit because Jason [received] a greater share of the assets and his earning capacity greatly exceeds" Mona's earning capacity. The chancellor awarded Mona periodic alimony of $1,000 per month until the parties' minor child became emancipated and periodic alimony of $2,500 per month thereafter. The chancellor did not award attorney's fees to either party.

¶10. Jason filed a motion for reconsideration and to alter or amend the judgment. He argued that the chancellor's valuation of his business was contrary to the law and evidence and that the chancellor erred in assigning values to certain other marital assets. Jason also

---

[3] The chancellor noted that in 2019, Jason earned $119,779; in 2020, he earned $112,255; in 2021, he earned $128,984; and in 2022, he earned $233,191.22. According to our calculations, the actual average income for this four-year period is $148,552.31.

[4] *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

argued that the chancellor erred by awarding Mona permanent periodic alimony and by providing for a future increase in alimony upon their child's emancipation. The chancellor entered a one-page order denying Jason's motion, and Jason filed a notice of appeal. On appeal, Jason raises the same issues he raised in his motion for reconsideration.

**ANALYSIS**

### I. Jason's Real Estate Appraisal Business

¶11. Jason started his appraisal business during the marriage, and there is no dispute that the business is a marital asset to the extent that it has any value beyond goodwill. *Smith v. Smith*, 379 So. 3d 954, 966 (¶¶38-39) (Miss. Ct. App. 2024) (holding that a business that a spouse started and actively worked in during the marriage was marital property). Once an asset is classified as marital, the next step is for the chancellor to value it. *Brown v. Brown*, 350 So. 3d 1169, 1178 (¶30) (Miss. Ct. App. 2022). The chancellor must determine the asset's "market value." *Ferguson*, 639 So. 2d at 929. In general, "[t]hree methods of valuation may be used to determine the market value of a business for this purpose: (1) an asset-based approach, in which assets and liabilities are evaluated, (2) a market-based approach, in which the market is surveyed for similar sales, or (3) an income-based approach, in which a value is placed on earning potential." *Dean v. Dean*, 304 So. 3d 156, 163 (¶21) (Miss. Ct. App. 2020) (quotation marks omitted). "The bottom line is one must arrive at the 'fair market value' or that price at which property would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell." *Id.* (brackets and ellipsis omitted).

¶12.    Critically, our Supreme Court has held that "'goodwill,' whether 'personal goodwill' or 'business enterprise goodwill' *shall not be included in the valuation of* [*a business*]" for purposes of equitable division.  *Yelverton v. Yelverton*, 961 So. 2d 19, 29 (¶21) (Miss. 2007) (emphasis added) (citing *Watson v. Watson*, 882 So. 2d 95, 105 (¶46) (Miss. 2004)); *accord Lewis v. Lewis*, 54 So. 3d 216, 218 (¶¶4-5) (Miss. 2011); *Singley v. Singley*, 846 So. 2d 1004, 1010 (¶17) (Miss. 2002).  The Court has clearly stated, "Goodwill is simply not property; thus it cannot be deemed a divisible marital asset in a divorce action."  *Lewis*, 54 So. 3d at 218 (¶3) (quoting *Singley*, 846 So. 2d at 1011 (¶18)).  In this context, "goodwill" "depends on the continued presence of the particular professional individual as a personal asset and *any value that may attach to that business as a result of that person's presence*."  *Watson*, 882 So. 2d at 101 (¶25) (quoting *Singley*, 846 So. 2d at 1011 (¶18)).  More recently, our Supreme Court has stated that because "goodwill is not an asset that can be divided between the spouses," "Mississippi law requires an asset-based approach to business valuations in divorce cases."  *Gutierrez v. Gutierrez*, 153 So. 3d 703, 710 (¶20) (Miss. 2014).

¶13.    In *Watson*, the Supreme Court reversed and remanded the division of marital assets because the chancellor had improperly valued the husband's veterinary clinic based on the husband's earnings.  *Watson*, 882 So. 2d at 102-03 (¶¶32-33).  The Supreme Court explained that because the husband's "earnings [were] dependent upon [his own] personal, professional practice," the chancellor improperly included goodwill in the business's value.  *Id.* at (¶33).  The Court explained that "professional goodwill is *an aspect of income potential and should be reflected in maintenance awards*, otherwise additional consideration of goodwill is

6

*duplicative and improper*." *Id.* at 103 (¶33) (quoting *Singley*, 846 So. 2d at 1010 (¶17) (citing *In re Marriage of Claydon*, 715 N.E.2d 1201 (Ill. App. Ct. 1999))). "[I]n the context of a single-owner professional practice," the valuation of the business must "carefully avoid[] any element attributable to the presence and work of the professional." *Id.* at 101 (¶¶25-26). Otherwise, the other spouse will receive an inequitable "double award." *Id.* at (¶26). "The professional's income will be used, first to calculate alimony, and then again to calculate the value of the 'business.'" *Id.* The Court explained that such an income-based valuation unreasonably assumes "that a single owner professional can sell and leave his or her practice which was built up over many years, and the practice will continue as before. That the value of the practice would be sharply diminished by loss of the professional, even when replaced by another professional, would seem obvious." *Id.* at 101 n.3.

¶14. As in *Watson*, an impermissible "double award" "is exactly what happened in this case." *Id.* at (¶26). The chancellor set the value of Jason's business simply by calculating Jason's average annual income from the business. However, Jason testified that his appraisal business is "just [him]" and has no assets except a desktop computer. Jason stated that in his opinion, the (non-goodwill) value of his business was "zero" because he could not guarantee that any of his customers would hire any other appraiser who might buy the business. Jason testified that an appraiser must be on a customer's approved "list" before the appraiser will receive any business from the customer. No evidence contradicted Jason's testimony, and Mona presented no evidence that Jason's business has any value separate and apart from Jason's personal reputation and ability to work and generate business as an appraiser.

7

Moreover, the chancellor gave no explanation for why the value of the business was equal to Jason's average annual income. We further note that if Jason actually sold his appraisal business, he would lose the income that was used as the basis for the permanent alimony awarded to Mona. Jason's reputation and ability to earn income as an appraiser cannot be counted *both* as an asset in the division of marital property *and* as a continuing income stream for purposes of alimony. But this is precisely what the chancellor did when he simply set the value of the business as Jason's average income. This is the sort of "inequity" and "double award" the Supreme Court has found to be improper. *Id.*

¶15. The purported value of Jason's business was a significant part of the value of the marital assets awarded to Jason and presumably impacted the overall equitable division of the marital estate. Because there is no evidence in the record that Jason's business had any value beyond goodwill and a desktop computer, we must reverse the judgment and remand for a new valuation and equitable division of the marital estate.

## II.     Other Marital Assets

¶16. Jason next argues that the chancellor's equitable division includes various other mistakes or errors. The judgment purported to award each party $25,000 from a "Savings Account @ BancorpSouth," which the chancellor valued at "$50,000." However, there is no evidence that such an account existed at the time of the divorce. This item may refer to a payment that Jason received when he sold his interest in a printing company around 2006—*i.e.*, *fifteen years before the parties separated*. However, Jason testified that those funds were invested or transferred multiple times during the marriage and were eventually

8

transferred into his retirement account prior to the divorce. Jason's retirement account was included in the equitable division of the marital estate and awarded to Jason in the final judgment. There is no evidence any savings account with a $50,000 balance existed at the time of the divorce. Accordingly, there is no basis for this non-existent account's inclusion in the equitable division of the marital estate.

¶17. The chancellor awarded Jason his guns and bows and valued them at $12,000 based on the value assigned to them in Mona's Rule 8.05 financial statement.[5] However, Mona specifically testified that her figure was a "typo" and that the guns and bows should have been valued at *$1,200*, not $12,000. Nonetheless, the chancellor valued the guns at $12,000 in the final judgment. As Jason notes, this error increased the value of the assets awarded to him by $10,800. Mona does not dispute this error on appeal.

¶18. Finally, the chancellor valued Jason's "trailers" at $7,400, adopting the value that Mona assigned to them. Mona testified that her father "helped" her value the trailers because she did not "know anything about the trailers." Mona acknowledged that one of the trailers "came with [Jason's] tractor," which she valued separately. Mona further acknowledged that she valued the tractor based on its original purchase price, which included the trailer. Thus, Mona agreed that the values she assigned to the "trailers" and to Jason's tractor included a "duplication," i.e., the value of one trailer was included in both values. Nonetheless, the chancellor adopted Mona's valuations of the trailers and the tractor. Jason raised this error in his post-trial motion for reconsideration, but the chancellor did not address it. Mona

---

[5] *See* UCCR 8.05.

likewise fails to address this issue on appeal.

¶19.　For the reasons discussed in Part I, *supra*, we must reverse the judgment and remand the case for a new equitable division of the marital estate. On remand, the chancellor should also address the errors noted in this Part II.[6]

### III.　Alimony

¶20.　"The chancellor has considerable discretion in determining the amount and type of alimony." *Craft v. Craft*, 825 So. 2d 605, 611 (¶22) (Miss. 2002). "We will not disturb the award on appeal unless it is found to be against the overwhelming weight of the evidence or manifestly in error." *Pearson v. Pearson*, 761 So. 2d 157, 165 (¶25) (Miss. 2000). "[A]ny award of alimony must be based upon a determination of need for such award upon a finding of a deficit suffered by a party after completion of the equitable division of marital property." *Jackson v. Jackson*, 114 So. 3d 768, 777 (¶22) (Miss. Ct. App. 2013). "But the 'deficit' to which our cases refer is not one spouse's receipt of assets with a lesser net value than those allocated to the other spouse." *Layton v. Layton*, 181 So. 3d 275, 282 (¶17) (Miss. Ct. App. 2015). "Rather, the question is whether the spouse seeking alimony is left 'with a deficit *with respect to having sufficient resources and assets to meet his or her needs and living expenses.*'" *Id.* (quoting *Jackson*, 114 So. 3d at 777 (¶22)).

¶21.　"If one party is left with a deficit, the chancery court must consider the *Armstrong*

---

[6] With regard to certain other assets, Jason argues that the chancellor erred by adopting Mona's value based on purchase prices rather than his hearsay testimony about the assets' present values—or that the chancellor erred by accepting Mona's testimony or Rule 8.05 statement rather than his testimony or Rule 8.05 statement. Jason fails to show that the chancellor committed any reversible error in valuing these remaining items based on the limited and conflicting evidence presented.

factors in determining whether to award alimony and the amount and type of the award." *Leblanc v. Leblanc*, 271 So. 3d 494, 505 (¶51) (Miss. Ct. App. 2018). The *Armstrong* factors include: (1) the income and expenses of the parties; (2) the health and earning capacities of the parties; (3) the needs of each party; (4) the obligations and assets of each party; (5) the length of the marriage; (6) the presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care; (7) the age of the parties; (8) the standard of living of the parties, both during the marriage and at the time of the support determination; (9) the tax consequences of the spousal support order; (10) fault or misconduct; (11) wasteful dissipation of assets by either party; or (12) any other factor deemed by the court to be just and equitable in connection with the setting of spousal support. *Armstrong*, 618 So. 2d at 1280.

¶22.   Although a chancellor has considerable discretion with respect to alimony, "when we reverse a court's division of marital property, we must also reverse any accompanying award or denial of alimony." *Faerber v. Faerber*, 13 So. 3d 853, 863 (¶39) (Miss. Ct. App. 2009). This is our general practice because we recognize that "[a]limony is not a completely independent financial issue in a domestic case, in which its consideration is hermetically sealed from other financial matters." *Buckley v. Buckley*, 815 So. 2d 1260, 1262 (¶10) (Miss. Ct. App. 2002). "Rather, the division of property and the need for alimony are closely connected, and a change in the division of property may affect the need for alimony." *Wallace v. Wallace*, 309 So. 3d 104, 110 (¶22) (Miss. Ct. App. 2020) (citing *Segree v. Segree*, 46 So. 3d 861, 866 (¶13) (Miss. Ct. App. 2010)). Therefore, when we reverse the

equitable division of the marital estate, we typically reverse the award or denial of alimony as well—not because the chancellor necessarily erred in awarding or denying alimony "but only so that the chancellor may consider these related issues together." *Id.*

¶23. Reversal and remand of the alimony award is especially appropriate in this case because, as discussed in Part I, *supra*, the chancellor's use of Jason's income to both value Jason's business and award alimony potentially resulted in an inequitable "double award" to Mona. *Watson*, 882 So. 2d at 101 (¶26). Therefore, the chancellor should consider both equitable division and alimony again on remand to ensure that the judgment as a whole is equitable and adequate to provide for both spouses.

¶24. In addition, as noted above, the chancellor previously found that Mona was left with "a deficit because Jason [received] the greater share of the assets and his earning capacity greatly exceeds" Mona's. This finding was based on the original judgment, which awarded 47% of the net value of the marital estate to Mona and 53% to Jason. These figures likely will change on remand once the chancellor properly values Jason's business and corrects other errors in the original judgment. More important, we reemphasize that "the 'deficit' to which our cases refer is not one spouse's receipt of assets with a lesser net value than those allocated to the other spouse. Rather, the question is whether the spouse seeking alimony is left 'with a deficit *with respect to having sufficient resources and assets to meet his or her needs and living expenses.*'" *Layton*, 181 So. 3d at 282 (¶17) (quoting *Jackson*, 114 So. 3d at 777 (¶22)). Therefore, on remand, the chancellor's consideration of alimony should focus on the extent to which Mona's living expenses exceed her income and other resources and

12

Jason's comparatively greater earning capacity.

¶25.    In summary, because it is necessary to reverse the equitable division of the marital estate and remand for further proceedings consistent with this opinion, we conclude that it is also appropriate to reverse and remand the related award of alimony.

**CONCLUSION**

¶26.    We reverse the judgment of the chancery court because the chancellor erroneously valued Jason's appraisal business based on Jason's income.  The value assigned to Jason's business necessarily included goodwill, which is not an asset subject to equitable division under Mississippi law.  Therefore, we remand for the chancellor to assign a proper value to Jason's business—essentially, the value of a desktop computer—and correct other errors in the judgment's equitable division.  We also remand the award of alimony for further consideration in light of any changes to the equitable division of the marital estate.

¶27.    **REVERSED AND REMANDED.**

    **BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER AND ST. PÉ, JJ., CONCUR.  WEDDLE, J., NOT PARTICIPATING.**